UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| T&O SHIPPING, LTD., <br><br>         Plaintiff, <br><br> -v- <br><br>SOURCE LINK CO., LTD., <br><br>         Defendant. | Case No. 06-CV-7724 (KMK) <br><br>OPINION AND ORDER |

Appearances:

Patrick F. Lennon, Esq.
Nancy R. Peterson, Esq.
Tisdale & Lennon, LLC
New York, New York
*Counsel for Plaintiff*

Edward A. Keane, Esq.
Garth S. Wolfson, Esq.
Mahoney & Keane, LLP
New York, New York
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

  Source Link Shipping Co. ("Source Link Shipping"), an interested non-party, seeks to vacate an Order of Maritime Attachment obtained by Plaintiff T&O Shipping, Ltd. ("T&O") against Source Link Co., Ltd. ("Source Link"), pursuant to the Federal Rules of Civil Procedure Supplemental Admiralty Rule E(4)(f) ("Rule E(4)(f)"). Plaintiff seeks leave to amend its Verified Complaint and Attachment to add Source Link Shipping as a Defendant on the grounds that Source Link Shipping is the alter ego of Source Link. For the reasons that follow, Source Link Shipping's Motion to Vacate the Attachment as to Source Link Shipping is GRANTED.

Plaintiff's Motion to Amend the Complaint is GRANTED, but the Motion to Amend the Attachment is DENIED.

## I.  Background

### A.  The Charter Party

Underlying this litigation is Plaintiff's time charter of the Vessel *Xiang Rui Men* ("Vessel") from Source Link on October 24, 2004, for a period of six months.  (Decl. of Linda Jacques ¶ 3 ("Jacques Decl.").)  On December 22, 2004, Plaintiff's agent, Venoos Shipping and Trading Co. Ltd. sub-chartered the Vessel to Hindustan (Zinc) Ltd. ("Hindustan") for a single voyage.  Sometime in January 2005, Hindustan attempted to unload its zinc cargo, but upon learning that the cargo contained a high moisture content, the master refused to load the zinc.  (*Id.* ¶ 6.)  The cargo was partially replaced and the ship continued to load, but additional expenses were incurred.  As a result, arbitration proceedings involving the Parties and their agents, applying English law, have been initiated in London.[1]

### B.  The Maritime Attachment

On September 26, 2006, this Court granted Plaintiff's *ex parte* request for Maritime

---

[1] The Parties' submissions on this point fail to paint the full picture.  For example, the Parties' papers fail to clearly identify all of the parties in the London arbitrations, their claims and counterclaims (including an explanation of those claims/counterclaims), and the current status of the arbitrations.  The Parties have made piecemeal submissions of documents from the arbitrations, and they have submitted declarations which address particular aspects of the arbitrations, but at no point has either Party comprehensively and cogently communicated to the Court the complete history of the arbitration proceedings.  The Court's vacatur of the Attachment makes such an explanation unnecessary at this time, because the vacatur renders Defendant's ripeness objection moot.  Should Plaintiff seek a new attachment against Source Link and Source Link Shipping, the Court will require a more comprehensive and detailed explanation of the arbitration proceeding to resolve any ripeness objection to that attachment, if Defendants raise one.

Attachment against Source Link in the amount of $967,664.61, pursuant to Federal Rules of Civil Procedure Supplemental Admiralty Rule B ("Rule B").  Plaintiff's request for an Order of Attachment was accompanied by a Verified Complaint and an affidavit, in which Plaintiff averred that Source Link could not be found within the Southern District of New York.  (Aff. in Support for Maritime Attachment ¶ 2.)  The Verified Complaint, supporting affidavit, and Attachment contained no allegations against Source Link Shipping, which is a distinct legal entity from Source Link.[2]

After obtaining the Attachment, Plaintiff was contacted by e-mail by counsel for garnishees J.P. Morgan Chase and the Bank of New York ("Bank"),[3] which remitted the details of an electronic funds transfer to Plaintiff.  (Garth S. Wolfson Decl. Ex. A.)  The Bank's counsel sought guidance from Plaintiff, because the wire transfer contained information regarding the funds of Source Link Shipping, not Source Link.  Plaintiff's response, also communicated over e-mail, was as follows:  "Looking at our file, it appears that the funds attached do indeed belong to the Defendant Source Link.  Thus, (although we would still like to see the wire remittance details) [sic]  Please *continue to restrain* the funds in the amount requested, *$967,664.61*.  And also please release the remaining excess funds."  (*Id.*)  After reviewing the wire remittance details, the Bank's lawyer sent Plaintiff another e-mail, this time, noting cautiously, that "the wire is going to 'Source Link Shipping Co.' not 'Source Link Co.' as listed on the writ.  Please

---

[2]Although Plaintiff now argues that Source Link Shipping is the alter ego of Source Link, that allegation was not included in the Verified Complaint, the affidavit, or the Attachment.

[3]Plaintiff informed the Court that Source Link Shipping's funds are being held by the Bank of New York and J.P. Morgan Chase, and that they have merged into one entity.  (Mar. Attachment Hr'g Tr. 3, Oct. 31, 2006.)

review details and advise." (*Id.*) Plaintiff replied that, "[i]t appears to be our Defendant, thus please continue to restrain the funds in the amount requested." (*Id.*) The Bank's lawyer then wrote back to say that he would instruct the Bank to restrain the funds. (*Id.*)

### C. Objections to the Attachment and the Post-Attachment Hearing

After attachment of Source Link Shipping's funds, counsel for Source Link Shipping[4] requested, on October 11, 2006, a post-attachment hearing pursuant to Rule E(4)(f). (Edward A. Keane Letter to the Court, Oct. 11, 2006.) In his letter, counsel argued that the Attachment should be vacated, because the Verified Complaint and Attachment were defective in that they failed to name Source Link Shipping, and that the Attachment was premature, because the London arbitration involving Source Link had not yet begun. (*Id.*) On October 19, 2006, the Parties attended a pre-motion conference, at which the Court scheduled briefing on the Motion to Vacate the Attachment. The next day, Plaintiff submitted an Amended Verified Complaint, naming Source Link Shipping as a second Defendant. (Am. Verified Compl.) Finally, on October 31, 2006, Plaintiff obtained from this Court an Order to Show Cause, requiring Source Link Shipping to show cause why Plaintiff's Attachment should not be amended to include Source Link Shipping. The Court heard oral argument on the Motion to Vacate the Attachment and Plaintiff's Order to Show Cause on November 8, 2006.[5]

---

[4]Although counsel has not filed a notice of appearance for Source Link Shipping, it is the Court's understanding that Source Link and Source Link Shipping are both represented by the law firm of Mahoney & Keane, LLP.

[5]After briefing was complete and the Court heard oral argument on the Motion to Vacate the Attachment, the Parties continued to submit letters to the Court addressing a number of topics. In some of the letters, the Parties argued unsolicited by the Court about the current status of the London arbitration, something which should have been done before oral argument. (Nancy R. Peterson Letter to the Court, Nov. 17, 2006; Garth S. Wolfson Letter to the Court,

II.  Discussion

A.  Standard of Review

1.  Vacatur of a Maritime Attachment

To obtain a maritime attachment, a plaintiff must comply with Rule B, which states in relevant part:

> If a defendant is not found within the district, . . . a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property - up to the amount sued for - in the hands of garnishees named in the process . . . .  The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment.  The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Fed. R. Civ. P. Supp. R. B(1)(a)-(b).

Rule E(4)(f) allows any person whose property has been attached pursuant to Rule B an opportunity to appear before the district court to contest the attachment.  To sustain an attachment, Plaintiff must show that it has fulfilled the "filing and service requirements of Rules B and E" and that: "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment."  *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006) (footnote omitted).  If

---

Nov. 17, 2006.)  In one exchange of letters, Defendant was concerned that additional funds had been attached, but upon further investigation, no additional funds had actually been attached. (Garth S. Wolfson Letter to the Court I, Nov. 20, 2006; Patrick F. Lennon Letter to the Court, Nov. 20, 2006; Garth S. Wolfson, Letter to the Court II, Nov. 20, 2006.)  The Parties' supplemental letters have been reviewed and considered by the Court.  None of the aforementioned letters affects the outcome of the pending motions.

a plaintiff fails to demonstrate that it has met the requirements of Rules B and E, the district court must vacate the attachment. *Id.* at 445. Maritime plaintiffs, however, are not required to prove their case at this stage. *See Wajilam Exps. (Sing.) Pte. Ltd. v. ATL Shipping Ltd.*, No. 05. Civ. 7955, 2006 WL 3019558, at *3 (S.D.N.Y. Oct. 23, 2006) (holding that where attachment is based on a fraud theory of veil-piercing, plaintiff should not be required to allege fraud with particularity before discovery) (citing *Japan Line, Ltd. v. Willco Oil Ltd.*, 424 F. Supp. 1092, 1094 (D. Conn. 1976)); *Sea-Terminals, Inc. v. Indep. Container Line, Ltd.*, CIV. A. No. 89-412-JRR, 1989 WL 222634, at *2 (D. Del. Aug. 16, 1989) (holding that whether the defendant "is a totally separate and unrelated company" from the company directly liable to plaintiff should not be decided "until the facts are fully fleshed out after discovery").

Attachments may otherwise only be vacated "in certain limited circumstances." *Aqua Stoli*, 460 F.3d at 444. A district court may vacate an attachment if the defendant shows that: "1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." *Id.* at 445 (footnote omitted).

### 2. Amending the Complaint and Joining a Party

Under Fed. R. Civ. P. 15(a), "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." "A motion to amend should be denied if 1) the party seeking to amend has been guilty of undue delay, dilatory motive, bad faith or repeated failure to cure deficiencies by previous amendments allowed, 2) the amendment would result in undue prejudice to the opposing party, or 3) the amendment would be futile."

6

*Sullivan v. W.N.Y. Residential, Inc.*, No. 01 Civ. 7847, 2003 WL 21056888, at *1 (E.D.N.Y. Mar. 5, 2003) (citing *Dluhos v. The Floating and Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 69 (2d Cir. 1998)).

Fed. R. Civ. P. 21 governs the joinder of parties, and states in relevant part: "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." "Rule 21 allows the court broad discretion to permit the addition of a party at any stage in the litigation." *Sullivan*, 2003 WL 21056888, at *1 (citing, *inter alia*, 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1688 (2d ed. 1986)); *see also Clarke v. Fonix Corp.*, No. 98 Civ. 6116, 1999 WL 105031, at *6 (S.D.N.Y. Mar. 1, 1999) ("Although Rule 21, and not Rule 15(a) normally governs the addition of new parties to an action, the same standard of liberality applies under either Rule." (internal quotation marks and citation omitted)), *aff'd,* 199 F.3d 1321 (2d Cir. 1999).

"'Federal courts sitting in admiralty apply federal common law when examining corporate identity.'" *Wajilam Exps.*, 2006 WL 3019558, at *6 (quoting *Status Int'l S.A. v. M & D Mar. Ltd.*, 994 F. Supp. 182, 186 (S.D.N.Y. 1998)). When the plaintiff seeks to plead an alter ego theory, "[a]ctual domination, rather than the opportunity to exercise control, must be shown." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (quoting *Williams v. McAllister Bros. Inc.*, 534 F.2d 19, 21 (2d Cir. 1976)); *see also Wajilam Exps.*, 2006 WL 3019558, at *6. Applying the corporate law of New York, the Second Circuit has identified several factors that can be considered when alter ego status has been pleaded, to wit: (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of

corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm's length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities. *See Wajilam Exps.*, 2006 WL 3019558, at *8 (citing *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001)).

    B.  Analysis

        1.  Vacatur of the Attachment

Source Link Shipping argues that the Attachment should be vacated, because Source Link Shipping was not named in the Verified Complaint or in the Attachment.  The Court agrees. Rule B(1)(a) states that, "If a *defendant* is not found within the district . . . a verified complaint may contain a prayer for process to attach the *defendant's* tangible or intangible personal property - up to the amount sued for - in the hands of garnishees named in the process." (emphasis added).  Rule B limits the scope of an attachment to a defendant who is named in a verified complaint, and because Source Link Shipping is not named in the Verified Complaint, Plaintiff cannot attach Source Link Shipping's funds.  *See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 269 (2d Cir. 2002) ("In attachment and garnishment proceedings the persons whose interests will be affected by the judgment are identified by the complaint."); *DS Bulk Pte. Ltd. v. Calder Seacarrier Corp.*, No. 05 Civ. 10146, 2006 WL 1643110, at *2 (S.D.N.Y. June 13, 2006) ("The language of Supplemental Rule B clearly anticipates that only a 'defendant' will be subject to an order of attachment.").  "Specifically, Supplemental Rule B requires a plaintiff to

make 'a prima facie showing that [it] has a maritime claim against the defendant in the amount sued for.'" *DS Bulk*, 2006 WL 1643110, at *2 (citing Fed. R. Civ. P. Supp. R. B advisory committee's note). Plaintiff's failure to name Source Link Shipping as a defendant in this action means that Plaintiff cannot make a prima facie showing that it properly alleged a maritime claim against Source Link Shipping when the Attachment was issued. *See DS Bulk*, 2006 WL 1643110, at *2 (vacating attachment of non-party defendant). In addition, because Source Link Shipping was not named in the Verified Complaint, Plaintiff did not aver, as required by Rule B, that Source Link Shipping could not be "found within the district." *Id.* Thus, the Attachment must be vacated for failure to comply with the requirements of Rule B. *Id.*

T&O's attempts to defend the Attachment are unpersuasive. First, the fact that Source Link may have an "interest" in the attached funds is largely irrelevant to a motion to vacate; the standard for defending an attachment is more exacting than possession of a mere interest in the attached funds. *Id.* (noting that plaintiff could not cite "authority for the proposition that property of a non-party to an action may be attached on the bare assertion that this property in fact belongs to a party to the action."). Second, T&O's argument that Source Link Shipping is a shell corporation that Source Link uses to shield itself from liability, even if it were true, would not justify the attachment of Source Link Shipping's funds, unless it was named in the Verified Complaint. Rule B demands as much.

Plaintiff, recognizing that it failed to include Source Link Shipping in the Verified Complaint and Attachment, argues that it should be permitted to amend the Verified Complaint to include Source Link Shipping. Plaintiff also seeks to retroactively amend the Attachment by virtue of amending the Verified Complaint. In essence, Plaintiff seeks to continue to hold Source

9

Link Shipping's funds while it cures the procedural defects in the Verified Complaint and the initial Attachment.  The rationale for this approach is that Source Link Shipping is the alter ego of Source Link and that these two entities should not be allowed to circumvent the maritime attachment process through a corporate shell game.

Before the Court considers the merits of Plaintiff's argument, it is appropriate to briefly consider the history of maritime attachment, especially with respect to concerns of due process. *See generally* William Tetley, *Arrest, Attachment, and Related Maritime Law Procedures*, 73 Tul. L. Rev. 1895, 1938-40 (1999) (discussing the evolution of maritime attachment to accommodate due process concerns).  The process of maritime attachment serves two purposes: it "provides a means to assure satisfaction if a suit is successful . . ." and it "insure[s] a defendant's appearance in an action." *Winter Storm*, 310 F.3d at 268 (citing *Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 48 (2d Cir. 1996)).  Maritime attachment is the modern embodiment of an ancient practice which pre-dates the existence of this country.  In the early days of the Republic, a plaintiff a seeking maritime attachment obtained an *ex parte* attachment from the clerk of the district court. *Winter Storm*, 310 F.3d at 269.  The participation of an Article III judge was not necessary. *Id.*  In 1966, the disjointed civil and admiralty rules were merged and the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure were created.[6]  *Id.*  Although the addition of Rule B laid out the now familiar requirements for obtaining a maritime attachment, the 1966 Advisory Committee Notes to Rule B stated that principles of due process did not require notice to a defendant after

---

[6]For a more complete account of the genesis of the Supplemental Rules, see *Winter Storm*, 310 F.3d at 266-74.

his property had been attached. *Id.* "Modern conceptions of fairness, however, dictate that actual notice be given to persons known to claim an interest in the property that is the subject of the action where that is reasonably practicable." *Id.* Actual notice is fulfilled when a plaintiff names a defendant in the complaint. *Id.*

The rules were again amended in 1985 so that orders of attachment could only be issued by a judge, although the process remains *ex parte*. *Id.* at 271-72; Fed. R. Civ. P. Supp. R. B(1)(b). This amendment served "to eliminate doubts as to whether the Rule is consistent with the principles of procedural due process enunciated by the Supreme Court." *Id.* at 272 (citing Fed. R. Civ. P. Supp. R. B advisory committee's note). The 1985 amendments also provided for a prompt post-deprivation hearing so that a shipowner can "attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P. Supp. R. E(4)(f) advisory committee's note; *see Winter Storm*, 310 F.3d at 272. "Under the rules as presently worded, process of maritime attachment cannot issue (absent exigent circumstances) unless a judge authorizes the process, and a defendant property owner is entitled to prompt notice of the attachment and a court hearing to test its validity." *Winter Storm*, 310 F.3d at 273.[7]

Some of the efforts outlined above to bring the process of maritime attachment in line with modern conceptions of due process were circumvented by Plaintiff, and therefore, the attachment cannot survive minimal due process scrutiny. First, Plaintiffs failed to provide Source Link Shipping with actual notice that T&O claimed an interest in Source Link Shipping's property, because the Complaint failed to name Source Link Shipping as a defendant. *See id.* at

---

[7]Plaintiff has not argued that exigent circumstances justified garnishing Source Link Shipping's funds.

269. In addition to contravening the requirements of Rule B, this defect also offends Defendant's due process rights. *See id.* at 271.

Second, Plaintiff has circumvented, albeit indirectly, the requirement that a judge issue an order of attachment. Plaintiff did so by exceeding the scope of the attachment, which only named Source Link. Orders of attachment are not blank checks by which a maritime plaintiff can attach the funds of entities that are not named as defendants, but that is what Plaintiff has done here. Although the Attachment named only Source Link - a fact not lost upon the Bank's lawyer who brought this to Plaintiff's attention - Plaintiff, perhaps realizing its error, instructed the Bank to restrain Source Link Shipping's funds. Plaintiff's usurpation of the judicial process was made all the more disappointing by the fact that Plaintiff's counsel was well aware that Source Link and Source Link Shipping are allegedly one in the same. To support its Motion to Amend the Complaint, Plaintiff submitted a complaint which was filed by Plaintiff's counsel in another matter styled as *Brave Bulk Transp., Ltd. v. Source Link Co.*, No. 04 Civ. 7222 (S.D.N.Y. Sept. 10, 2004). The *Brave Bulk* complaint named both Source Link and Source Link Shipping as defendants,[8] which means that as early as 2004, Plaintiff's counsel was aware that when suing Source Link, it was prudent to include Source Link Shipping. (Peterson Decl. Ex. 13.) In light of the *Brave Bulk* litigation, Plaintiff's failure to name Source Link Shipping in this action is puzzling, and should not be excused at the expense of Defendant's due process rights. These

---

[8]The *Brave Bulk* complaint caption identifies the defendant as, "Source Link Co., Ltd. a/k/a Source Link Shipping Co. Ltd." (Nancy R. Peterson Decl. Ex. 13 ("Peterson Decl.").) Although the *Brave Bulk* complaint does not contain any alter ego allegations, the decision to include "a/k/a Source Link Shipping Co. Ltd." demonstrates that Plaintiff's counsel knew that there were two legal entities that allegedly could be included as a defendant in the same complaint.

facts tilt the balance of the equities in Defendant's favor, because the decision not to name Source Link Shipping in the Verified Complaint and Attachment cannot be attributed to the actions of Defendant. *See Greenwich Marine, Inc. v. S. S. Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965) ("The inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge . . . .").

The facts and equities of this case are also distinguishable from those in *Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06 Civ. 1979 (S.D.N.Y. Aug. 15, 2006) (vacating attachment, staying release of attached funds and granting leave to amend), which Plaintiff relies on. In the context of a motion to vacate an attachment, the *Tide Line* court considered whether the plaintiff had adequately pled alter ego status against Transclear, S.A. ("Transclear"), a named defendant, even though only one sentence in the complaint referred to Transclear. After holding that the single allegation against Transclear was sufficient to adequately allege alter ego status, the court considered Tide Line's application to amend the complaint to include an alter ego claim. Critically, the court noted that Tide Line made this application on the basis of "new information discovered since the filing of the Complaint." *Id.* at 24. The court granted Tide Line's application to amend the complaint, and in the interests of "judicial efficiency," also granted Tide Line's request to keep the attachment in place.[9] *Id.* at 37-38. Plaintiff asks this Court to grant it similar, if not identical, relief.

*Tide Line* is distinguishable on a few important grounds. First, Tide Line actually named Transclear as a defendant in the complaint, and obtained an attachment based on that complaint,

---

[9]The court also noted that the parties had not provided any case law addressing whether the court's remedy could be adopted, and the court noted that it could not find any authority on that point. *Tide Line*, No. 06 Civ. 1979, at 38.

something that did not happen here.  Source Link Shipping was not named in the Complaint, no allegations were made against it, and the Attachment signed by this Court did not include Source Link Shipping.  Second, the *Tide Line* Court allowed the plaintiff to amend the complaint on the basis of newly discovered evidence that supported piercing the corporate veil.  T&O's counsel, unlike counsel in *Tide Line*, has suspected for at least two years that Source Link Shipping is the alter ego of Source Link.  Thus, while the *Tide Line* court relied upon judicial efficiency in permitting the attachment to remain in place, doing the same here would raise serious due process concerns.  Because it is prudent to avoid constitutional questions, the Court will not construe the Order of Attachment it signed nor Rule B to permit Plaintiff to retroactively amend its Attachment.  *Cf. Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

2.  Amending the Complaint to Include Source Link Shipping

Plaintiff also seeks leave to amend the Verified Complaint to include allegations that Source Link Shipping is the corporate alter ego of Source Link.  Defendant opposes Plaintiff's motion on two grounds.  First, Defendant objects to amending the Verified Complaint, if by doing so, Plaintiff can continue to attach the funds which were initially attached.  Second, Defendant argues that Plaintiff has not made a sufficient showing to justify piercing the corporate veil.  Defendant's first objection is moot, because the Court has vacated the attachment of Source Link Shipping's money.  Therefore, the Court only will consider whether Plaintiff has made a sufficient showing to plead alter ego status.

T&O has provided ample support to amend the Verified Complaint to include an alter ego claim against Source Link Shipping. T&O argues that the *Brave Bulk* litigation, discussed *supra*, illustrates that Source Link and Source Link shipping are distinct corporations only in name. T&O claims that in *Brave Bulk*, Source Link Shipping chartered a vessel in the name of Source Link. (Plaintiff T&O Shipping, Ltd.'s Mem. of Law at 6-8; Peterson Decl. Exs. 6, 7, 8, 11, 12, 14.) Although Source Link was the named charter for the vessel, correspondence to the Master of the vessel from Source Link Shipping suggests that Source Link Shipping, not Source Link, was the charterer. (Peterson Decl. Ex. 11.) Source Link Shipping also issued invoices pursuant to Source Link's charter party. (*Id.* at Ex. 12.) Further, when Source Link Shipping's funds were attached pursuant to the *Brave Bulk* litigation, Source Link Shipping referred counsel to the arbitration clause in the charter party which names Source Link, not Source Link Shipping. (*Id.* at Ex. 14.)

There are also serious doubts about the independence of the two entities. Defendant concedes that there is common ownership among the two entities (Mar. Attachment Hr'g Tr. Nov. 8, 2006), and Plaintiff submits that correspondence from both companies has emanated from a man named Tony Tao (Peterson Decl. Exs. 14, 15). Source Link also appears to operate out of a room at the Holiday Inn in Nanjing, China, and both entities share the same fax number. (*Id.* at Exs. 15, 16.)

The close relationship between Source Link and Source Link Shipping appears to have manifested itself in the facts underlying this action, as well. Although Source Link Shipping was not named in the Vessel's charter party, it took an active role in the charter. Correspondence to T&O following short loading of the Vessel came from a Source Link Shipping employee, in

which she writes "we have come to a stage whereby we want to make a final decision whether to proceed full swing into arbitration under the charter party." (*Id.* at Ex. 17.) T&O has also cited an email from the broker to the charter party that shows that Source Link Shipping was the owner in the charter party. (*Id.*)

The Federal Rules of Civil Procedure permit the addition of a party by order of the court "at any stage of the action and on such terms as are just." Fed. R. Civ. P. 21; *see also Momentum Luggage & Leisure Bags v. Jansport. Inc.*, No. 00 Civ. 7909, 2001 WL 58000, at *2 (S.D.N.Y. Jan 23, 2001). At this stage, Plaintiff's alter ego allegations are sufficient to support Plaintiff's application to amend the Verified Complaint to include Source Link Shipping as a defendant. The corporate veil may be pierced when "the parent used the corporate entity to perpetrate a fraud, or where the parent has so dominated and disregarded the corporate entity's form that the entity primarily transacted the parent's business rather than its own." *Wajilam Exps.*, 2006 WL 3019558, at *6 (citing *Dow Chem. Pacific Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 342 (2d Cir. 1986)). The evidence cited by Plaintiff supports Plaintiff's allegations at this stage that Source Link and Source Link Shipping have been utilized by their principals interchangeably. Although the two entities are legally distinct, there is reason to believe that there is no meaningful difference between the two entities. "In making an alter ego determination, a court is concerned with reality and not form, and with how the corporation operated. Unlike the theory of agency, which interprets a contractual relationship, alter ego examines the actual conduct of the parent vis-á-vis its subsidiary." *Id.* (internal citations, alterations and quotation marks omitted) (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006)). Several factors that are relevant to alter ego status have been adequately alleged by Plaintiff, such as: the

intermingling of funds; overlap in ownership, officers, directors, and personnel; common office space, address and telephone numbers of corporate entities; whether the corporations are treated as independent profit centers; payment or guarantee of the corporation's debts by the dominating entity; and intermingling of property between the entities. *See id.*, at *8 (listing factors).

It also bears noting that Defendant has not argued that it would be prejudiced by the proposed amendment to the Verified Complaint, nor has it asserted that such an amendment would be futile. Thus, pursuant to Fed. R. Civ. P. 15(a) and 21, Plaintiff is granted leave to amend the Verified Complaint to include alter ego allegations against Source Link Shipping.

### III. Conclusion

For the foregoing reasons, Source Link Shipping's Motion to Vacate the Attachment as to Source Link Shipping is GRANTED. Plaintiff's Motion to Amend the Complaint is GRANTED, but the Motion to Amend the Attachment is DENIED.

SO ORDERED.

Dated:  December 5, 2006
        New York, New York

/s/ KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

<u>Service List</u>:

Patrick F. Lennon, Esq.
Nancy R. Peterson, Esq.
Tisdale & Lennon, LLC
11 West 42nd St., Suite 900
New York, New York 10036
(212) 354-0025
Fax: (212) 869-0067
*Counsel for Plaintiff*


Edward A. Keane, Esq.
Garth S. Wolfson, Esq.
Mahoney & Keane, LLP
111 Broadway, Tenth Floor
New York, New York 10006
(212) 385-1422
Fax: (212) 385-1605
*Counsel for Defendant*